AMERICAN SURETY COMPANY OF NEW YORK
*v.* MAROTTA.

No. 131.   Argued December 8, 1932.—Decided January 9, 1933.

514

*Mr. Harry LeBaron Sampson* for petitioner.

*Mr. George I. Cohen* submitted for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

July 16, 1930, petitioner claiming to be a creditor of respondent in an amount exceeding $7,000 filed a petition in bankruptcy against her in the United States district court for Massachusetts. It is alleged that on March 18, 1930, she conveyed her property with intent to hinder, delay and defraud her creditors including the petitioner and that she was insolvent. Respondent's answer denied that she committed the alleged act of bankruptcy or was insolvent or that petitioner was a creditor or had a provable claim against her. The court heard the case on evidence taken by, and the report of, a special master, made findings of fact and adjudged respondent a bank-

rupt. The Circuit Court of Appeals reversed. 57 F. (2d) 829.

The substance of the findings, so far as material to our decision, may be briefly stated:

Under date of April 18, 1927, one Mogliani as principal and petitioner as surety executed a bond for $15,000 to the treasurer of the Commonwealth of Massachusetts to secure, among other things, the payment of any judgment that might be obtained in an action against the principal for injury resulting to any person by reason of the discharge of fireworks by him at a public exhibition. The bond was made and delivered pursuant to Massachusetts G. L., 1921, c. 148, § 57 C, D. Acts, 1921, c. 500. Petitioner became surety in accordance with an application executed by respondent and in reliance upon her agreement to indemnify it against every claim or liability arising on the bond. The application and agreement were accompanied by a financial statement made by her showing that in addition to considerable cash she owned several pieces of real estate worth much more than the amount of the bond. September 26, 1927, one Beatrice Ricci was injured by fireworks discharged at a public exhibition under the direction of Mogliani. She sued him for damages and, March 4, 1930, got a verdict for $10,000. March 18 respondent conveyed all her real estate to one Muollo, and on the same day he mortgaged a part of it and quit-claimed all to her husband to be held by the latter in trust for the benefit of their children. These conveyances covered all respondent's property and were made without consideration and with specific intent on her part to hinder, delay and defraud the petitioner, her only creditor. The verdict having been reduced, judgment was entered April 10, 1930, in favor of Ricci and against Mogliani for $6,650.48. Unable to collect from him, she demanded payment from

petitioner. And April 18, 1930, conformably to the statute, a suit on the bond was brought against petitioner to recover for her the amount of the judgment. Some time before it filed the petition in bankruptcy petitioner paid to her attorney the sum claimed and judgment was entered against it for that amount.

The Circuit Court of Appeals sustained respondent's contention that to constitute an act of bankruptcy, a fraudulent transfer must hinder, delay or defraud a creditor holding a claim provable at the time of such conveyance, and held that petitioner's claim against respondent was contingent and not provable until the entry of the judgment against Mogliani, and that therefore respondent committed no act of bankruptcy. And it directed the district court to dismiss the petition.

Unless required by the Act, the meaning of the word " creditors " as used in § 3a (1) is not to be restricted to those whose claims are provable at the time of the fraudulent conveyance.

Section 1 declares: " The words and phrases used in this Act and in proceedings pursuant hereto shall, unless the same be inconsistent with the context, be construed as follows: . . . (9) ' creditor ' shall include anyone who owns a demand or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy." 11 U. S. C., § 1. And § 3a contains the following: "Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them." 11 U. S. C., § 21a. The decision below shows that at common law the word " creditors " has a broader meaning. But the court construed the definition of creditor, § 1 (9), to be comprehensive and the word " include " to be one of limitation, the equivalent of " include only," and to exclude every person not having a demand pres-

ently provable. Its ruling that respondent's transfer of her property to defraud petitioner was not an act of bankruptcy rests upon that construction.

In definitive provisions of statutes and other writings, " include " is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation or enumeration. *Fraser* v. *Bentel,* 161 Cal. 390, 394; 119 Pac. 509. *People ex rel. Estate of Woolworth* v. *State Tax Commn.,* 200 App. Div. 287, 289; 192 N. Y. S. 772. *Matter of Goetz,* 71 App. Div. 272, 275; 75 N. Y. S. 750. *Calhoun* v. *Memphis & P. R. Co.,* Fed. Cas. No. 2,309. *Cooper* v. *Stinson,* 5 Minn. 522. Subject to the effect properly to be given to context, § 1 prescribes the constructions to be put upon various words and phrases used in the Act. Some of the definitive clauses commence with " shall include," others with " shall mean." The former is used in eighteen instances and the latter in nine instances, and in two both are used. When the section as a whole is regarded, it is evident that these verbs are not used synonymously or loosely but with discrimination and a purpose to give to each a meaning not attributable to the other. It is obvious that, in some instances at least, " shall include " is used without implication that any exclusion is intended. Subsections (6) and (7), in each of which both verbs are employed, illustrate the use of " shall mean " to enumerate and restrict and of " shall include " to enlarge and extend. Subsection (17) declares " oath " shall include affirmation. Subsection (19) declares " persons " shall include corporations, officers, partnerships, and women. Men are not mentioned. In these instances the verb is used to expand, not to restrict. It is plain that " shall include " as used in subsection (9) when taken in connection with other parts of the section cannot reasonably be read to be the equivalent of " shall mean " or " shall include only."

There being nothing to indicate any other purpose, Congress must be deemed to have intended that in § 3a (1) "creditors" should be given the meaning usually attributed to it when used in the common law definition of fraudulent conveyances. See *Coder* v. *Arts,* 213 U. S. 223, 242. *Lansing Boiler & Engine Works* v. *Ryerson,* 128 Fed. 701, 703. *Githens* v. *Shiffler,* 112 Fed. 505. Under the common law rule a creditor having only a contingent claim, such as was that of the petitioner at the time respondent made the transfer in question, is protected against fraudulent conveyance. And petitioner, from the time that it became surety on Mogliani's bond, was entitled as a creditor under the agreement to invoke that rule. *Yeend* v. *Weeks,* 104 Ala. 331, 341; 16 So. 165. *Whitehouse* v. *Bolster,* 95 Me. 458; 50 Atl. 240. *Mowry* v. *Reed,* 187 Mass. 174, 177; 72 N. E. 936. *Stone* v. *Myers,* 9 Minn. 303. *Cook* v. *Johnson,* 12 N. J. Eq. 51. *American Surety Co.* v. *Hattrem,* 138 Ore. 358, 364; 3 P. (2d) 1109. *U. S. Fidelity & Guaranty Co.* v. *Centropolis Bank,* 17 F. (2d) 913, 916. *Thomson* v. *Crane,* 73 Fed. 327, 331.

As the Circuit Court of Appeals, upon constructions of §§ 1 (9) and 3a (1) which we hold erroneous, disposed of the case without deciding other questions there raised, the decree will be reversed and the case will be remanded to that court for further consideration and proceedings in harmony with this opinion.

*Reversed and remanded.*